**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

CALIFORNIA COMMUNITIES AGAINST TOXICS, CLEAN POWER LAKE COUNTY, COMITÉ DIÁLOGO AMBIENTAL, RIO GRANDE INTERNATIONAL STUDY CENTER, SIERRA CLUB, and UNION OF CONCERNED SCIENTISTS,

*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. Environmental Protection Agency,

*Respondents*.

No. 24-1178

**THE ETHYLENE OXIDE STERILIZATION ASSOCIATION'S MOTION FOR LEAVE TO INTERVENE AS A RESPONDENT**

Under Rule 15(d) of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 15(b), the Ethylene Oxide Sterilization Association, Inc. (EOSA) moves for leave to intervene as a Respondent in the petition for review filed by California Communities Against Toxics *et al*. (together, Environmental Petitioners) against the U.S. Environmental Protection Agency and Administrator Michael S. Regan (together, EPA). Environmental Petitioners represented through counsel that they do not oppose this motion. EPA takes no position on this motion.

Environmental Petitioners seek review of EPA's final agency action entitled *National Emission Standards for Hazardous Air Pollutants: Ethylene Oxide Emissions Standards for Sterilization Facilities Residual Risk and Technology Review*, 89 Fed. Reg. 24,090 (Apr. 5, 2024) (Final Rule or Rule). EOSA seeks to intervene as a Respondent in regard to this petition because its members are directly regulated by the Final Rule and could be adversely affected by the relief sought by Environmental Petitioners, who may seek to require EPA to increase the stringency of the Rule's emissions standards or otherwise make compliance even more onerous.

This motion is timely because it is filed within 30 days of Petitioners' filing of their petition for review. Fed. R. App. P. 15(d); D.C. Cir. R. 15(b).

**BACKGROUND**

On April 13, 2023, EPA issued a Proposed Rule titled *National Emissions Standards for Hazardous Air Pollutants: Ethylene Oxide Emissions Standards for Sterilization Facilities Residual Risk and Technology Review*. 88 Fed. Reg. 22,790. EPA invoked Section 112 of the Clean Air Act (CAA), 42 U.S.C. § 7412, as the source of its authority to issue the Proposed Rule. *Id.* at 22,795. In the Proposed Rule, EPA asserted that its toxicological assessment indicated that Ethylene Oxide (EtO) is a more potent carcinogen than previously understood and proposed stringent new standards intended to reduce EtO emissions, including onerous new continual monitoring and reporting requirements. 88 Fed. Reg. 22,792–94.

EOSA is a non-profit trade association, incorporated and organized under the laws of the District of Columbia, comprised of the leading experts of the medical device manufacturing and sterilization industry, and its members include manufacturers of medical devices, emissions control equipment, EtO sterilizers, and EtO detection systems, as well as contract sterilization providers, sterilization consultants, environmental consultants, and EtO suppliers. Many of EOSA's members are subject to EPA's CAA Section 112 standards for sterilization facilities. Given that direct interest in the Proposed Rule, EOSA submitted comments on behalf of its members.[1] Some EOSA members also submitted their own comments.[2]

On April 5, 2024, EPA issued the Final Rule challenged by the Environmental Petitioners. 89 Fed. Reg. 24,090. The Final Rule establishes emission standards under CAA Sections 112(d)(2)-(3) and (d)(5) for previously unregulated emission sources of EtO; finalizes new risk-based standards under CAA Section 112(f)(2) for previously regulated sources; and finalizes technology-based standards under CAA section 112(d)(6) based on EPA's review of developments in practices, processes, and control technologies for this source category. *Id*. at 24,091.

---

[1] EOSA Comments on Proposed National Emission Standards for Hazardous Air Pollutants: [EtO] Emissions Standards for Sterilization Facilities Residual Risk and Technology Review (June 27, 2023), EPA-HQ-OAR-2019-0178-0618.

[2] *See, e.g.,* Comments of Sterigenics U.S., LLC on NESHAP Proposed Rule (July 2, 2023) (Sterigenics Comments), EPA-HQ-OAR-2019-0178-0632.

EPA recognized in the Final Rule that "commercial sterilization facilities play a vital role in maintaining an adequate supply of sterilized medical devices for public health needs in the U.S." *Id.* at 24,092. But EPA nonetheless imposed stringent new emission standards applicable to a broad range of sterilization facilities, including sources where EtO use is less than one ton per year (tpy). *Id.* at 24,093–94. And EPA did not simply impose standards on a facility-wide basis; the Final Rule requires emission reductions of up to 99.99 percent from individual chamber and room vents of particular types within the facility. *See id.* at 24,120–21. Further, EPA also imposed new compliance monitoring and reporting requirements, including to require continuous emissions monitoring at various points within the facility and associated daily reporting—even when the source is not operating. *Id.* at 24,094.

In comments on the Proposed Rule, Environmental Petitioners urged EPA to add additional requirements, including (1) fenceline monitoring; (2) regulation of fugitive emissions from warehouses; (3) a phase-out of EtO use at commercial sterilizers for all non-essential uses; and (4) a faster compliance timeline.[3] In its Final Rule, EPA declined to impose the first three of those requirements, and provided

[3] *See*, *e.g.*, Comment submitted by Emma Cheuse, Staff Attorney, Earthjustice et al. (EPA-HQ-OAR-2019-0178-0143); Comments submitted by Earthjustice et al. (EPA-HQ-OAR-2019-0178-0153 & EPA-HQ-OAR-2019-0178-0638).

somewhat longer compliance periods than advocated by Environmental Petitioners.[4]

## LEGAL STANDARD

With respect to the substantive criteria for granting intervention, Fed. R. App. P. 15(d) authorizes intervention in circuit court proceedings to review agency actions on a motion containing "a concise statement of interest of the moving party and the grounds for intervention" that is filed within 30 days after the petition for review. In determining whether to grant intervention, this Court typically draws on the policies underlying Federal Rule of Civil Procedure (Fed. R. Civ. P.) 24(a). *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997).

Under Fed. R. Civ. P. 24(a), a party seeking to intervene as of right must satisfy four factors: (1) timeliness of the application to intervene; (2) a legally protected interest; (3) that the action, as a practical matter, impairs or impedes that interest; and (4) that no party to the action can adequately represent the potential intervenor's interest. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (looking "to the timeliness of the motion . . . and whether the existing parties can be expected to vindicate the would-be intervenor's interests").

A court may alternatively grant permissive intervention when a movant makes

[4] *See* 89 Fed. Reg. 24,131–32 (fenceline monitoring); *id*. at 24,115 (warehouses); *id*. at 24,092 (phase out); *id*. at 24,103, 24,177–78, 24,180 (compliance).

a timely application and the applicant's claim or defense and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(1); *see EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

**ARGUMENT**

EOSA has a significant, direct interest in this litigation: to protect its members' sterilization operations as well as its members' customers, who depend on access to medical sterilization products. While EOSA and its members generally support EPA's efforts to update the CAA Section 112 emission standards for sterilization facilities, EOSA has filed a petition for review of certain aspects of the Final Rule because compliance with certain provisions will be difficult, costly, and will raise numerous technical challenges for the regulated community.[5] But complying with the Rule likely would become even more onerous and costly were this Court to grant Environmental Petitioners' petition for review.

Based on the comments submitted by various Environmental Petitioners, EOSA anticipates that they will urge the Court to require EPA to implement even more stringent, costly, and challenging standards and associated monitoring and reporting requirements. That would directly harm EOSA's members, who must comply with such regulations and bear the resulting costs. EOSA and its members

---

[5] *See* D.C. Cir. No. 24-1180.

thus have a significant and direct interest in the outcome of this petition for review. And EOSA and its members' interests in this case are not adequately represented by the existing parties, including EPA, which does not share their interests. EOSA accordingly meets the standard for mandatory intervention, and should be granted leave to participate in this litigation as a Respondent-Intervenor. In the alternative, the Court should grant EOSA permissive intervention.

## I.     EOSA meets the standard for mandatory intervention.

### A.     EOSA's motion is timely.

When evaluating the timeliness of a motion to intervene, the Court will consider the time that has passed since the case was filed, the likelihood of prejudice to the existing parties, the purpose for which intervention is sought, and the need for intervention to preserve the proposed intervenor's rights. *See United States v. British Am. Tobacco Australian Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).

EOSA's motion to intervene is timely. On June 3, 2024, California Communities Against Toxics (CCAT) and other environmental organizations filed this petition for review (Doc. 2057841). This motion has been filed within the 30-day time period for intervention specified in Fed. R. App. P. 15(d), and thus is timely. There can be no prejudice to other parties from granting intervention at this early stage of the proceedings, before briefing has begun. And as discussed below, intervention is needed to protect EOSA's members' rights and interests in this case.

### B. EOSA and its members have direct and significantly protectable interests in this case which may be impaired by an adverse disposition.

This Court requires a "significantly protectable" interest to intervene, *see S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (citation omitted), but the interest test is flexible and serves as "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967). A movant can demonstrate a "legally protectable" interest by showing that it stands to "gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (citation omitted). With respect to impairment, Fed. R. Civ. P. 24(a) requires only that a party seeking intervention be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."

EOSA easily meets both the interest and impairment requirements. EOSA's members are the objects of the Final Rule, which imposes standards and requirements with which they must comply or face potential enforcement action and penalties. The changes to the Final Rule that Environmental Petitioners are likely to seek through this petition, including potential imposition of fenceline monitoring, regulation of fugitive emission from warehouses, EtO phase-outs, and accelerated compliance timelines, would impose significant additional burdens on EOSA

members. The resolution of these and other issues presented by the Final Rule will directly impact EOSA members' interests, and EOSA's ability to protect those interests will be impaired if it is not allowed to participate in this litigation.

This Circuit has consistently granted requests by regulated entities to intervene as Respondents when EPA regulations are challenged. *See, e.g.*, *Sierra Club v. EPA*, No. 13-1112 (Doc. 1436907) (D.C. Cir. May 20, 2013) (order granting trade association's motion to intervene in a petition to review a CAA rulemaking governing Portland cement manufacturing). Here, EOSA members—private companies that own, operate, outfit, or advise many of the EtO sterilization facilities units subject to the Final Rule—will be regulated under the Final Rule, and thus are objects of the very governmental regulation at issue. That is why EOSA and its members submitted extensive comments on the Proposed Rule alerting EPA to the fact that "[t]he proposed NESHAP requirements would cause enormous, severe adverse impacts on the availability of sterilized devices for needed medical procedures that are essential to the American public." EOSA Comments at 70.

For the same reasons EOSA has demonstrated an interest in the Rule sufficient to justify intervention, EOSA members also meet the Article III standing requirements.[6] *See, e.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.

---

[6] Associations such as EOSA have standing to litigate on behalf of their members when: (i) their members would have standing to sue individually; (ii) the interests

Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (recognizing that the interest requirement under Fed. R. C. P. 24(a) is met when the proposed intervenor has Article III standing).

**C. No other party adequately represents EOSA's interests.**

EOSA readily meets any inadequate-representation requirement that Fed. R. App. P. 15(d) may incorporate. The burden of demonstrating inadequate representation "is not onerous," and EOSA "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, none of the existing parties can adequately represent EOSA's interests. Environmental Petitioners are likely to challenge aspects of the Final Rule that EOSA and its members support and rely on. EOSA is thus plainly not aligned with

---

they seek to protect are germane to their purpose; and (iii) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The interests of EOSA members, who own, operate, outfit, and advise commercial sterilizers covered by the Final Rule, may be harmed should Environmental Petitioners prevail in their challenges. EOSA members thus would have standing to intervene in their own right. Moreover, the interests EOSA seeks to protect are germane to its purposes as the association that represents sterilization facilities, and individual member participation is not required because Petitioners are not seeking money damages. *See United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553–54 (1996).

Environmental Petitioners, and they cannot represent EOSA's interests.

Nor does EPA share the same interests as EOSA. As a governmental entity "charged by law with representing the public interest of its citizens," EPA must avoid advancing the "narrower interest" of certain businesses "at the expense of its representation of the general public interest." *Dimond*, 792 F.2d at 192-93; *see also County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("The District of Columbia Circuit has 'often concluded that government entities do not adequately represent the interests of aspiring intervenors.'") (quoting *Fund for Animals*, 322 F.3d at 736). EPA is not well-suited to represent the interests of EOSA members in this litigation, which are focused on avoiding the unsupported or unjustified addition of costly and burdensome regulatory requirements. Indeed, the interests of EPA and EOSA members often diverge, since EPA has regulatory authority under the CAA and EOSA members are targets of that regulation.

EOSA does not support all aspects of the Final Rule, but it does support certain aspects of the Rule—including EPA's decisions not to impose some of the additional, more stringent emission standards and monitoring and compliance requirements sought by Environmental Petitioners. The unique perspective that EOSA brings to this case, based on its members' knowledge, expertise, and practical experiences on the technical and record issues that are key to the Final Rule, will supplement EPA's defense of the aspects of the Final Rule that Environmental

Petitioners challenge and aid the Court in resolving this case.

## II. Alternatively, EOSA is entitled to permissive intervention.

EOSA also satisfies the requirements for permissive intervention. Under Fed. R. Civ. P. 24(b), courts may "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" so long as the motion is timely and intervention would not "unduly delay or prejudice the rights of the original parties." Fed. R. Civ. P. 24(b)(1)(B), (3).

There are plainly common questions of law and fact raised by EOSA and EPA's defenses to the petition at issue; both center on the requirements of CAA Section 112, the content of the Final Rule, and the administrative record on which it rests. As also discussed above, the motion is timely because it is being filed within 30 days of Environmental Petitioners' petition for review. And intervention at this early stage, before briefing has begun, will not cause any delay or prejudice. Thus, even if the Court concluded that the standard for mandatory intervention had not been met, EOSA easily meets the standard for permissive intervention.

## CONCLUSION

For the foregoing reasons, EOSA requests that this Court grant its motion for leave to intervene in support of Respondents in the above-captioned proceedings.

Respectfully submitted,

Dated: July 3, 2024

/s/ Amanda Shafer Berman

Amanda Shafer Berman
aberman@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue
Washington, DC 20004
Telephone: 202.688.3451
Facsimile: 202.628.5116

Kelly N. Garson
Lynn L. Bergeson
BERGESON & CAMPBELL, P.C.
2200 Pennsylvania Ave., N.W.,
Suite 100W
Washington, DC 20037
Telephone: (202) 557-3801
Facsimile: (202) 557-3836
kgarson@lawbc.com
lbergeson@lawbc.com

*Counsel for The Ethylene Oxide Sterilization Association, Inc.*

**CERTIFICATE OF COMPLIANCE**

The foregoing motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,684 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Times New Roman font.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and the Circuit Rules, I hereby certify that have this 3rd day of July, 2024, served a copy of the foregoing document electronically through the Court's CM/ECF system on all registered counsel.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

# ATTACHMENT A

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| CALIFORNIA COMMUNITIES AGAINST TOXICS, CLEAN POWER LAKE COUNTY, COMITÉ DIÁLOGO AMBIENTAL, RIO GRANDE INTERNATIONAL STUDY CENTER, SIERRA CLUB, and UNION OF CONCERNED SCIENTISTS, | |
| *Petitioners*, | |
| v. | Case. No. 24-1178 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. Environmental Protection Agency, | |
| *Respondents*. | |

## CERTIFICATE AS TO PARTIES

### 1. Parties in this Court

The Petitioners in this case are California Communities Against Toxics, Clean Power Lake County, Comite Dialgo Ambiental, Rio Grande International Study Center, Sierra Club and Union of Concerned Scientists. The Respondents in this case is the U.S. Environmental Protection Agency ("EPA") and Michael S. Regan, Administrator, EPA.

### 2. Intervenors in this Court

As of this time, there are no intervenors.

**3. Amici curiae in this Court**

As of this time, there are no amici curiae.

**4. Related cases**

This case is consolidated with No. 24-1080, which is an appeal of the same underlying order. The Petitioner in 24-1080 is The Ethylene Oxide Sterilization Association, Inc. The Respondents in 24-1080 are the U.S. Environmental Protection Agency ("EPA") and Michael S. Regan, Administrator, EPA.

/s/ Amanda Shafer Berman
Amanda Shafer Berman

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| CALIFORNIA COMMUNITIES AGAINST TOXICS, CLEAN POWER LAKE COUNTY, COMITÉ DIÁLOGO AMBIENTAL, RIO GRANDE INTERNATIONAL STUDY CENTER, SIERRA CLUB, and UNION OF CONCERNED SCIENTISTS, | |
| *Petitioners*, | |
| v. | Case. No. 24-1178 |
| U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, U.S. Environmental Protection Agency, | |
| *Respondents*. | |

**RULE 26.1 DISCLOSURE STATEMENT OF**
**THE ETHYLENE OXIDE STERILIZATION ASSOCIATION, INC.**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, The Ethylene Oxide Sterilization Association, Inc. ("EOSA") respectfully submits this Disclosure Statement. EOSA is a nonprofit organization incorporated in the District of Columbia for the purpose of representing members of the ethylene oxide sterilizing industry to promote and enhance the safe use of ethylene oxide for sterilization purposes. EOSA has no parent company, subsidiary, or affiliates. No publicly-owned company has a 10% or greater ownership interest in EOSA.

Respectfully submitted,

/s/ Amanda Shafer Berman
Amanda Shafer Berman
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 688-3451
Facsimile: (202) 628-5116

Dated: July 3, 2024

Kelly N. Garson
Lynn L. Bergeson
BERGESON & CAMPBELL, P.C.
2200 Pennsylvania Ave., NW
Suite 100W
Washington, DC 20037
Tel: (202) 557-3801
Fax: (202) 557-3836
kgarson@lawbc.com
lbergeson@lawbc.com

*Counsel for the Ethylene Oxide Sterilization Association, Inc.*