**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| THE ETHYLENE OXIDE STERILIZATION ASSOCIATION, INC., <br><br> Petitioner, <br><br> v. <br><br> ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S. REGAN, ADMINISTRATOR, U.S. ENVIRONMENTAL PROTECTION AGENCY, <br><br> Respondents, | Case No. 24-1180 <br> (consolidated with 24-1178) |

**RESPONDENTS' OPPOSITION TO THE AMERICAN PETROLEUM INSTITUTE'S MOTION FOR LEAVE TO INTERVENE**

The Court should deny American Petroleum Institute's ("Petroleum Institute") Motion For Leave to Intervene ("Motion") as a petitioner because the Petroleum Institute's motion does not establish standing to challenge a rule about commercial sterilizers and because existing parties can adequately represent its interest.

**BACKGROUND**

On April 5, 2024, EPA's final rule titled, "National Emission Standards for Hazardous Air Pollutants: Ethylene Oxide Emissions Standards for Sterilization

Facilities Residual Risk and Technology Review," 89 Fed. Reg. 24090 ("Final Rule"), was published in the Federal Register, setting new emissions standards for ethylene oxide emitted by commercial sterilization facilities and making other changes to the standards applicable to these sources. As part of that Final Rule, EPA conducted a risk review of ethylene oxide emissions from those facilities to ensure that emission standards adequately protect public health. *Id*.; 42 U.S.C. § 7412(f)(2).

EPA had completed a risk review of the same source category in 2006. 71 Fed. Reg. 17712 (Apr. 7, 2006). But since then, new information about ethylene oxide has become available. 89 Fed. Reg. at 24091. For example, the cancer risk from inhalation of ethylene oxide is now estimated to be 60 times greater than EPA estimated during the 2006 risk review. *Id*. at 24094. So EPA conducted the second risk review in the Final Rule to ensure that its analysis is up to date. EPA's second risk review informed some of the new emission standards set for ethylene oxide emissions from commercial sterilizers. *Id*. at 24098-99 (Table 6 shows what new emission standards were established under 42 U.S.C. § 7412(f)(2)).

On June 4, 2024, the Ethylene Oxide Sterilization Association, Inc., ("Sterilization Association") petitioned this Court to review EPA's Final Rule. Doc. #2057972. In its statement of issues filed on July 3, the Sterilization Association revealed that it seeks to challenge EPA's statutory authority under the

Clean Air Act – specifically 42 U.S.C. § 7412(f)(2) – to conduct a second risk review. Doc. #2062992 at 1-2 (issue no. 1).

On July 5, 2024, well after the statutory deadline to seek review of the rule, the Petroleum Institute moved to intervene as a petitioner. Doc. # 2063232.

## ARGUMENT

**I.    The Petroleum Institute Lacks Standing.**

A party seeking intervention in this Court must demonstrate standing. *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013) ("We also require a party seeking to intervene as of right to demonstrate Article III standing."); *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018) ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing.").[1]

The Petroleum Institute is a trade association that does not assert an organizational interest in this litigation; thus, it only has standing if at least one member has standing. *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169, 174 (D.C. Cir. 2012). The Petroleum Institute must show that its member has suffered an "injury

---

[1] In *Virginia House of Delegates v. Bethune-Hill*, on which the Petroleum Institute relies (Motion at 6 n.1) to argue that it need not show standing, the Supreme Court explained that no showing of standing had been required of "an intervenor in support of … Defendants" who only "participated as an appellee" in this Court. 587 U.S. 658, 663 (2019). By contrast, the Petroleum Institute "seek[s] to invoke this Court's jurisdiction" by participating in this case as a petitioner. *Id.*

3

in fact," and that injury must be "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury must also be fairly traceable to the rule and redressable by its vacatur. *Id.*

The Petroleum Institute fails to demonstrate that any of its members have suffered an injury in fact. As a threshold matter, the Petroleum Institute admits that none of its members are regulated by EPA's Final Rule. Motion at 4. As a result, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan,* 504 U.S. at 562; *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); *cf. City of Cleveland, Ohio v. Nuclear Regul. Comm'n*, 17 F.3d 1515, 1516-17 (D.C. Cir. 1994) (denying intervention for lack of standing because party is not regulated by challenged rulemaking).

In trying to establish standing, the Petroleum Institute can only hypothesize about what other actions EPA *could* take in the future. The chain of conjecture goes like this: the Petroleum Institute does not want EPA to conduct risk reviews a second time on petroleum-related standards not at issue in this case. Motion at 4. So if EPA were to prevail in its decision to conduct a second residual risk review here, then EPA might someday conduct a second risk review for emission standards applicable to the Petroleum Institute's members, and that second risk review might, in turn, result in tighter standards. Motion at 9. In other words, the Petroleum Institute seeks to intervene because this Court's decision on a legal issue

4

could have a precedential effect on EPA's future, hypothetical decision to conduct a second risk review that might or might not impose stricter emission standards.[2]

The Petroleum Institute's theory of injury is too speculative and causation is too attenuated to be considered "a concrete and particularized, actual or imminent invasion of a legally protected interest." *Lujan*, 504 U.S. at 560; *see also Food & Drug Admin.*, 602 U.S. at 383 ("The causation requirement also rules out attenuated links—that is, where the government action is so far removed from its distant (even if predictable) ripple effects that the plaintiffs cannot establish Article III standing.").

This Court has consistently denied intervention for parties positing similar theories of standing. *See, e.g., Nuclear Regul. Comm'n,* 17 F.3d at 1515-16 (petitioner's "concern about the precedential effect of an adverse decision is not

---

[2] Although the Petroleum Institute says it "would" face increased regulatory burdens or "would" face new rounds of rulemaking, Motion at 9, it provides no support for its speculation about future events. EPA has not stated an intention to conduct a second risk review for any emission standards applicable to the Petroleum Institute's members. Furthermore, a risk review does not always result in stricter emission standards. *See, e.g.,* 86 Fed. Reg. 64385, 64389 (Nov. 18, 2021) ("[B]ased on the risk review conducted pursuant to CAA section 112(f)," EPA determined that the existing standards for Flexible Polyurethane Foam Fabrication Operations already "provide an ample margin of safety to protect public health" and thus finalized "no changes" to the existing standard). So even if EPA had stated an intention to conduct a second risk review, the Petroleum Institute's concerns would still be speculative and unripe. *Cf. La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) (dismissing petition for review because trade association had not shown that the event necessary for its claim to ripen had occurred).

sufficient to confer standing" and thus "we deny the motion for leave to intervene"); *Conf. Grp., LLC v. FCC*, 720 F.3d 957, 959 (D.C. Cir. 2013) ("[T]he mere fact that an adjudication creates a precedent that could harm a non-party does not create the injury-in-fact required for Article III standing."); *Shipbuilders Council of Am. v. United States*, 868 F.2d 452, 456 (D.C. Cir. 1989) ("[W]e know of no authority recognizing that the mere potential precedential effect of an agency action affords a bystander to that action a basis for complaint.").

Indeed, just a few years ago, this Court denied intervention for another industry trade association (National Rural Electric Cooperative Association) that sought to intervene in a case challenging a Clean Air Act regulation that did not regulate the association's members, raising the same issue and alleging comparable injuries to those put forward by the Petroleum Institute. *See* Order, *Nat'l Waste & Recycling Ass'n v. EPA*, No. 16-1371, Doc. #1813101 (D.C. Cir., Oct. 29, 2019). The Court held that the trade association lacked standing because it was not regulated by the rule, and the possibility that a case might create an adverse precedent for the trade association in the future does not amount to an injury-in-fact. *Id*. at 2.

Because the Petroleum Institute's interest in this case is purely academic and none of its members have suffered an injury in fact, this Court should deny the Motion. If the Petroleum Institute believes additional briefing is needed, it can file

6

an amicus brief consistent with this Court's rules. *See id.* (denying intervention but granting leave to participate as amicus curiae).

## II. Existing Parties Can Adequately Represent the Petroleum Institute's Interests.

While the burden of establishing inadequate representation in a motion for intervention is not onerous, intervention will be denied when the intervening party only seeks to raise an issue already raised by another party. *BCP Trading & Invs., LLC v. Comm'r of Internal Revenue*, 991 F.3d 1253, 1273 (D.C. Cir. 2021) (denying intervention because the issue raised by proposed intervenor was already raised by existing parties and thus duplicative); *see also United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) ("A would-be intervenor is adequately represented when she offers no argument not also pressed by an existing party.") (citing *Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)) (cleaned up).

Here, the Petroleum Institute's sole interest is to challenge EPA's statutory authority under 42 U.S.C. § 7412(f)(2) to conduct a second risk review. Motion at 4. Petitioner Sterilization Association raised that exact same issue in its statement of issues, identified as issue number one. Doc. #2062992 at 1-2. The Petroleum Institute's unfounded speculation that Petitioner Sterilization Association might not "present a full range of arguments in litigation or may ultimately decide to abandon this issue altogether," Motion at 11, does not amount to a showing that

7

"there is a serious possibility that the (absentee's) interest may not be adequately represented by any existing party." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). As a private trade association like the Petroleum Institute, Petitioner Sterilization Association has every reason to fully litigate the issue, especially because its members (unlike those of the Petroleum Institute) are actually facing new regulations based on the challenged risk review.

Because Petitioner Sterilization Association plans to raise the same statutory interpretation issue that the Petroleum Institute identifies as the sole basis for its intervention, the Petroleum Institute's asserted interests in this litigation are adequately represented. *BCP Trading & Invs.*, 991 F.3d at 1273; *All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th at 432. This Court has the expertise to resolve the statutory interpretation issue raised by Petitioner Sterilization Association, and the Petroleum Institute has no unique expertise or perspective that warrants its participation as a party.

## CONCLUSION

The Court should deny the Petroleum Institute's Motion to Intervene.

Dated: July 12, 2024             Respectfully submitted,

                                 TODD KIM
                                 Assistant Attorney General
                                 Environment and Natural Resources
                                 Division

                                  */s/ Jeffrey Hammons*

8

>JEFFREY HAMMONS
>U.S. Department of Justice
>Environment and Natural Resources Division
>Environmental Defense Section
>P.O. Box 7611
>Washington, D.C. 20044
>(202) 598-6925
>jeffrey.hammons@usdoj.gov
>
>*Counsel for Respondents*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,800 words, excluding those parts exempted by Rule 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.

>/s/ *Jeffrey Hammons*
>JEFFREY HAMMONS

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Jeffrey Hammons*
JEFFREY HAMMONS